| | |
|---|---|
| 1 | NEAL S. SALISIAN, SBN 240277 |
| | neal.salisian@salisianlee.com |
| 2 | JARED T. DENSEN, SBN 325164 |
| | jared.densen@salisianlee.com |
| 3 | PATTY W. CHEN, SBN 322992 |
| | patty.chen@salisianlee.com |
| 4 | **SALISIAN | LEE LLP** |
| | 550 South Hope Street, Suite 750 |
| 5 | Los Angeles, California 90071-2924 |
| | Telephone:  (213) 622-9100 |
| 6 | Facsimile:   (800) 622-9145 |
| 7 | MARISA D. POULOS (SBN 197904) |
| | marisa.poulos@amerisbank.com |
| 8 | **BALBOA CAPITAL CORPORATION** |
| | 575 Anton Boulevard, Suite 1080 |
| 9 | Costa Mesa, California 92626 |
| | Tel: (949) 399-6303 |
| 10 | |
| 11 | Attorneys for Plaintiff |
| | AMERIS BANK d/b/a BALBOA CAPITAL CORPORATION |

THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERIS BANK, a Georgia state-chartered banking corporation, doing business as BALBOA CAPITAL CORPORATION, | Case No.: |
| Plaintiff, | **BALBOA CAPITAL CORPORATION'S COMPLAINT FOR:** |
| vs. | **1. BREACH OF EQUIPMENT FINANCING AGREEMENT (3 COUNTS)** |
| MAGIC TRANS LLC, an Indiana limited liability company; VICTOR MARDARI, an individual, | **2. BREACH OF PERSONAL GUARANTY (3 COUNTS)** |
| Defendants. | |

Salisian|Lee LLP                                                                                                   COMPLAINT

Plaintiff Ameris Bank, a Georgia state-chartered banking corporation, doing business as Balboa Capital Corporation ("Balboa" or "Plaintiff"), alleges as follows:

## PARTIES AND JURISDICTION

1. Plaintiff Ameris Bank d/b/a Balboa Capital Corporation ("Balboa" or "Plaintiff") is, and at all times relevant to this action was, a Georgia state-chartered banking corporation with Balboa Capital Corporation as one if its divisions, which division has its principal place of business in the State of California, County of Orange.

2. Defendant Magic Trans LLC ("Magic Trans") is, and at all times relevant to this action was, an Indiana limited liability company with its principal place of business in 11335 NE 122nd Way, Suite 105, Kirkland, WA 98034-6933.

3. Defendant Victor Mardari ("Mardari") (collectively, with Magic Trans, "Defendants") is, and at all times relevant to this action was, a resident of the County of King, State of Washington, and was a member, officer, director, agent and/or owner of Magic Trans. Based on information and belief, including the Driver's License submitted by Mardari to Balboa, Mardari is domiciled in King County in the State of Des Moines, WA 98198-9090.

4. Based upon research, and upon information and belief, Magic Trans has one member – defendant Mardari – who is a citizen of the State of Washington. Thus, Magic Trans is a citizen of the State of Washington.

5. Plaintiff is informed and believes, and thereon alleges, that each defendant, directly or indirectly, or through agents or other persons, was engaged with some or all of the other defendants in a joint enterprise for profit and bore such other relationships to some or all of the other defendants so as to be liable for their conduct with respect to the matters alleged below. Plaintiff is informed and believes and thereon alleges that each defendant acted pursuant to and within the scope of the relationships alleged above, that each defendant knew or should have

known about the foregoing, and that each defendant authorized, ratified, adopted, approved, controlled, and aided and abetted the conduct of all other defendants.

6. The obligations sued upon herein are commercial in nature and the Complaint herein is not subject to the provisions of California Civil Code Sections 1801, *et seq.* (Unruh Retail Installment Sales Act) and/or California Civil Code Sections 2981, *et seq.* (Rees-Levering Motor Vehicle Sales and Finance Act).

7. Pursuant to each Equipment Financing Agreements and Personal Guaranties described herein, Defendants agreed those documents would be governed by the laws of the State of California.

8. In addition, Equipment Financing Agreement No. 364381-000 ("EFA No. 1") provides, in pertinent part, as follows:

> **30. CONSENT TO EXCLUSIVE AND MANDATORY JURISDICTION AND VENUE OF CALIFORNIA.** Debtor submits to the jurisdiction of California and agrees that any action or proceeding to enforce this Agreement, or any action or proceeding arising out of or related to this Agreement will be exclusively commenced, initiated and litigated in the California State Courts of Orange County California and/or the United States District Court for the Central District of California, Santa Ana Division.

9. Additionally, Equipment Financing Agreement No. 364381-001 ("EFA No. 2") and Equipment Financing Agreement No. 364381-003 ("EFA No. 3") provides, in pertinent part, as follows:

> **25. GENERAL...** DEBTOR SUBMITS TO THE JURISDICTION OF CALIFORNIA AND AGRESS THAT THE CALIFORNIA STATE COURTS OF ORANGE COUNTY AND/OR THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA DIVISION, SHALL HAVE EXCLUSIVE JURISDICTION OVER ANY ACTION OR PROCEEDING TO ENFORCE THIS AGREEMENT OR ANY ACTION OR PROCEEDING ARISING OUT OF THIS AGREEMENT.

10. <u>Jurisdiction</u>. This Court has jurisdiction over the case pursuant to 28 U.S.C. § 1332(a).

11.	Specifically, as described above, Balboa is a citizen of the State of Georgia and California; Magic Trans and Mardari are each a citizen of the State of Washington.  As such, neither Magic Trans nor Mardari are citizens of California or Georgia, and there exists complete diversity of citizenship between Plaintiff and Defendants.  Lastly, as alleged herein, the amount in controversy exceeds $75,000.

12.	<u>Venue</u>.  Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b)(2) and in the Southern Division pursuant to 28 U.S.C. § 84(c)(3).

13.	All officers of Balboa, including all witnesses, and all of Balboa's documents are located in the State of California, County of Orange.  The transactions at issue in this Action occurred in the State of California, County of Orange.

## FIRST CAUSE OF ACTION

### (Breach of Equipment Financing Agreement No. 1)

### (Against Magic Trans)

14.	Balboa alleges and incorporates by reference each and every allegation contained above, inclusive, as though each were fully set forth here.

15.	Prior to July 2021, Balboa is informed and believes that Magic Trans initiated and engaged with Peterbilt Truck Center of Memphis, LLC ("Equipment Vendor No. 1") located at 1761 East Brooks Road Memphis, TN 38116, in order to coordinate the acquisition and financing of certain equipment (hereinafter referred to as "Collateral No. 1") for its business.  Equipment Vendor No. 1 worked with Magic Trans in the selection of Collateral No. 1 and in coordinating its delivery.

16.	Thereafter, Balboa is informed and believes, and therefore alleges, that Equipment Vendor No. 1 initiated and coordinated submission of Magic Trans' electronic credit application to Balboa and other financial institutions.  Upon review, Magic Trans concluded that Balboa offered agreeable terms to finance Collateral No. 1 commensurate with its requirements.  Thereafter, Equipment Vendor No. 1 accumulated and submitted to Balboa the requisite signatories,

documentation and financial information from Magic Trans to finance Collateral No. 1 being supplied by Equipment Vendor No. 1.

17. On or about July 19, 2021, Magic Trans executed EFA No. 1, under the terms of which Balboa loaned to Magic Trans the sum of One Hundred Sixty-Eight Thousand Nine Hundred Five Dollars And Twenty-Seven Cents ($168,905.27) to finance Collateral No. 1 for its business. EFA No. 1 required Magic Trans to make seventy-two (72) monthly payments of $3,150.00 , payable on the 25th day of each month beginning September 25, 2021. A true and correct copy of EFA No. 1 is attached as **Exhibit A** and is incorporated here by reference.

18. The last payment received by Balboa was credited toward the monthly payment due for January 25, 2025. Therefore, on or about February 25, 2025, Magic Trans breached EFA No. 1 by failing to make the monthly payment due on that date. Magic Trans' failure to make timely payments is a default under the terms of EFA No. 1.

19. In accordance with EFA No. 1, and as a proximate result of Magic Trans' default thereunder, Balboa declared the entire balance of the payments under EFA No. 1 to be immediately due and payable to Balboa. Therefore, there became due the sum of $97,650.00. These amounts are exclusive of interest, attorneys' fees and costs, no portion of which sum has been paid by Magic Trans.

20. Balboa has performed all of the terms, conditions, and covenants required to be performed by it under the terms of EFA No. 1, except as excused or prevented by the conduct of Magic Trans.

21. As a proximate result of Magic Trans' breach of EFA No. 1, Balboa has been damaged in the total sum of **$97,650.00**, plus prejudgment interest from February 25, 2025, until the entry of judgment herein.

22. Further, under the terms of EFA No. 1, Magic Trans promised to pay all costs, including reasonable attorneys' fees, incurred by Balboa in the

enforcement of EFA No. 1. Therefore, Balboa requests the Court award Balboa its reasonable attorneys' fees and costs against Magic Trans.

23. EFA No. 1 also provides Balboa the remedy of possession of Collateral No. 1 and to obtain an order that Balboa may, in accordance with applicable state law, sell the remaining Collateral No. 1 and apply the net proceeds from the sale to the remaining loan balance. Alternatively, if possession cannot be had, Balboa is entitled to recover the value of Collateral No. 1.

## SECOND CAUSE OF ACTION

**(Breach of Personal Guaranty No. 1)**

**(Against Mardari)**

24. Balboa alleges and incorporates by reference each and every allegation contained above, inclusive, as though each were fully set forth here.

25. Concurrently with the execution of EFA No. 1, and in order to induce Balboa to enter into EFA No. 1 with Magic Trans, Mardari personally guaranteed, in writing, the payment of the then-existing and future indebtedness due and owing to Balboa under the terms of EFA No. 1 ("Guaranty No. 1"). A true and correct copy of the written Personal Guaranty No. 1 signed by Mardari is attached as **Exhibit B** and incorporated herein by reference.

26. Balboa has performed all the terms, conditions, and covenants required to be performed by Balboa under the terms of the Guaranty No. 1, except as excused or prevented by the conduct of Mardari.

27. Following a default by Magic Trans under the terms of EFA No. 1, Balboa demanded Mardari make the payments required under EFA No. 1. Mardari failed to meet the Guaranty No. 1 obligations and make the payments required under EFA No. 1.

28. Pursuant to the terms of Guaranty No. 1, the sum of **$97,650.00**, plus prejudgment interest from February 25, 2025, is due and payable to Balboa from Mardari. This Complaint, in addition to previous demands, shall constitute further

demand upon Mardari to pay the entire indebtedness due and owing from Magic Trans to Balboa under the terms of EFA No. 1.

29. Under the terms of Guaranty No. 1, Mardari promised to pay all costs, including reasonable attorneys' fees, incurred by Balboa in the enforcement of EFA No. 1 and Guaranty No. 1. Therefore, Balboa requests the Court award Balboa its reasonable attorneys' fees and costs as against Mardari.

## THIRD CAUSE OF ACTION

### (Breach of Equipment Financing Agreement No. 2)

### (Against Magic Trans)

30. Balboa alleges and incorporates by reference each and every allegation contained above, inclusive, as though each were fully set forth here.

31. Prior to April 2022, Balboa is informed and believes that Magic Trans initiated and engaged with Utility Trailer Sales of Utah, Inc. ("Equipment Vendor No. 2"), located at 4970 West 2100 South, Salt Lake City, UT 84120 in order to coordinate the acquisition and financing of certain equipment (hereinafter referred to as "Collateral No. 2") for its business. Equipment Vendor No. 2 worked with Magic Trans in the selection of Collateral No. 2 and in coordinating its delivery.

32. Thereafter, Balboa is informed and believes, and therefore alleges, that Equipment Vendor No. 2 initiated and coordinated submission of Magic Trans' electronic credit application to Balboa and other financial institutions. Upon review, Magic Trans concluded that Balboa offered agreeable terms to finance Collateral No. 2 commensurate with its requirements. Thereafter, Equipment Vendor No. 2 accumulated and submitted to Balboa the requisite signatories, documentation and financial information from Magic Trans to finance Collateral No. 2 being supplied by Equipment Vendor No. 2.

33. On or about April 4, 2022, Magic Trans executed EFA No. 2, under the terms of which Balboa loaned to Magic Trans the sum of Ninety-Seven Thousand Eight Hundred Seventy-Five Dollars ($97,875.00) to finance Collateral

1  No. 2 for its business. EFA No. 2 required Magic Trans to make sixty (60) monthly
2  payments of $2,310.50, payable on the 11th day of each month beginning May 11,
3  2022. A true and correct copy of EFA No. 2 is attached as **Exhibit C** and is
4  incorporated here by reference.

5  34. The last payment received by Balboa was credited toward the monthly
6  payment due for February 11, 2025. Therefore, on or about March 11, 2025, Magic
7  Trans breached EFA No. 2 by failing to make the monthly payment due on that
8  date. Magic Trans' failure to make timely payments is a default under the terms of
9  EFA No. 2.

10  35. In accordance with EFA No. 2, and as a proximate result of Magic
11  Trans' default thereunder, Balboa declared the entire balance of the payments under
12  EFA No. 2 to be immediately due and payable to Balboa. Therefore, there became
13  due the sum of $62,383.50. These amounts are exclusive of interest, attorneys' fees
14  and costs, no portion of which sum has been paid by Magic Trans.

15  36. Balboa has performed all of the terms, conditions, and covenants
16  required to be performed by it under the terms of EFA No. 2, except as excused or
17  prevented by the conduct of Magic Trans.

18  37. As a proximate result of Magic Trans' breach of EFA No. 2, Balboa
19  has been damaged in the total sum of **$62,383.50**, plus prejudgment interest from
20  March 11, 2025, until the entry of judgment herein.

21  38. Further, under the terms of EFA No. 2, Magic Trans promised to pay
22  all costs, including reasonable attorneys' fees, incurred by Balboa in the
23  enforcement of EFA No. 2. Therefore, Balboa requests the Court award Balboa its
24  reasonable attorneys' fees and costs as against Magic Trans.

25  39. EFA No. 2 also provides Balboa the remedy of possession of
26  Collateral No. 2 and to obtain an order that Balboa may, in accordance with
27  applicable state law, sell the remaining Collateral No. 2 and apply the net proceeds
28

from the sale to the remaining loan balance.  Alternatively, if possession cannot be had, Balboa is entitled to recover the value of Collateral No. 2.

### FOURTH CAUSE OF ACTION
### (Breach of Personal Guaranty No. 2)
### (Against Mardari)

40. Balboa alleges and incorporates by reference each and every allegation contained above, inclusive, as though each were fully set forth here.

41. Concurrently with the execution of EFA No. 2, and in order to induce Balboa to enter into EFA No. 2 with Magic Trans, Mardari personally guaranteed, in writing, the payment of the then-existing and future indebtedness due and owing to Balboa under the terms of EFA No. 2 ("Guaranty No. 2").  A true and correct copy of the written Guaranty No. 2 signed by Mardari is attached as **Exhibit D** and incorporated herein by reference.

42. Balboa has performed all the terms, conditions, and covenants required to be performed by Balboa under the terms of the Guaranty No. 2, except as excused or prevented by the conduct of Mardari.

43. Following a default by Magic Trans under the terms of EFA No. 2, Balboa demanded Mardari make the payments required under EFA No. 2.  Mardari failed to meet the Guaranty No. 2 obligations and make the payments required under EFA No. 2.

44. Pursuant to the terms of Guaranty No. 2, the sum of **$62,383.50**, plus prejudgment interest from March 11, 2025, is due and payable to Balboa from Mardari.  This Complaint, in addition to previous demands, shall constitute further demand upon Mardari to pay the entire indebtedness due and owing from Magic Trans to Balboa under the terms of EFA No. 2.

45. Under the terms of Guaranty No. 2, Mardari promised to pay all costs, including reasonable attorneys' fees, incurred by Balboa in the enforcement of EFA

No. 2 and Guaranty No. 2.  Therefore, Balboa requests the Court award Balboa its reasonable attorneys' fees and costs against Mardari.

## FIFTH CAUSE OF ACTION

**(Breach of Equipment Financing Agreement No. 3)**

**(Against Magic Trans)**

46. Balboa alleges and incorporates by reference each and every allegation contained above, inclusive, as though each were fully set forth here.

47. Prior to May 2022, Balboa is informed and believes that Magic Trans initiated and engaged with Crossroads Trailer Sales & Service, Inc., located at 3602 Crossroads Boulevard, Albert Lea, MN 56007 (Equipment Vendor No. 3), in order to coordinate the acquisition and financing of certain equipment (hereinafter referred to as "Collateral No. 3") for its business.  Equipment Vendor No. 3 worked with Magic Trans in the selection of Collateral No. 3 and in coordinating its delivery.

48. Thereafter, Balboa is informed and believes, and therefore alleges, that Equipment Vendor No. 1 initiated and coordinated submission of Magic Trans' electronic credit application to Balboa and other financial institutions.  Upon review, Magic Trans concluded that Balboa offered agreeable terms to finance Collateral No. 3 commensurate with its requirements.  Thereafter, Equipment Vendor No. 1 accumulated and submitted to Balboa the requisite signatories, documentation and financial information from Magic Trans to finance Collateral No. 3 being supplied by Equipment Vendor No. 3.

49. On or about May 3, 2022, Magic Trans executed EFA No. 3, under the terms of which Balboa loaned to Magic Trans the sum of Fifty-Eight Thousand Ninety-Five Dollars ($58,095.00) to finance Collateral No. 3 for its business. EFA No. 3 required Magic Trans to make sixty (60) monthly payments of $1,380.55, payable on the 14th day of each month beginning June 14, 2022.  A true and correct copy of EFA No. 3 is attached as **Exhibit E** and is incorporated here by reference.

50. The last payment received by Balboa was credited toward the monthly payment due for May 14, 2025. Therefore, on or about June 14, 2025, Magic Trans breached EFA No. 3 by failing to make the monthly payment due on that date. Magic Trans' failure to make timely payments is a default under the terms of EFA No. 3.

51. In accordance with EFA No. 3, and as a proximate result of Magic Trans' default thereunder, Balboa declared the entire balance of the payments under EFA No. 3 to be immediately due and payable to Balboa. Therefore, the sum of $34,513.75 became due. These amounts are exclusive of interest, attorneys' fees and costs, no portion of which sum has been paid by Magic Trans.

52. Balboa has performed all of the terms, conditions, and covenants required to be performed by it under the terms of EFA No. 3, except as excused or prevented by the conduct of Magic Trans.

53. As a proximate result of Magic Trans' breach of EFA No. 3, Balboa has been damaged in the total sum of **$34,513.75**, plus prejudgment interest from June 14, 2025, until the entry of judgment herein.

54. Further, under the terms of EFA No. 3, Magic Trans promised to pay all costs, including reasonable attorneys' fees, incurred by Balboa in the enforcement of EFA No. 3. Therefore, Balboa requests the Court award Balboa its reasonable attorneys' fees and costs as against Magic Trans.

55. EFA No. 3 also provides Balboa the remedy of possession of Collateral No. 3 and to obtain an order that Balboa may, in accordance with applicable state law, sell the remaining Collateral No. 3 and apply the net proceeds from the sale to the remaining loan balance. Alternatively, if possession cannot be had, Balboa is entitled to recover the value of Collateral No. 3.

## SIXTH CAUSE OF ACTION

### (Breach of Personal Guaranty No. 3)

### (Against Mardari)

56. Balboa alleges and incorporates by reference each and every allegation contained above, inclusive, as though each were fully set forth here.

57. Concurrently with the execution of EFA No. 3, and in order to induce Balboa to enter into EFA No. 3 with Magic Trans, Mardari personally guaranteed, in writing, the payment of the then-existing and future indebtedness due and owing to Balboa under the terms of EFA No. 3 ("Guaranty No. 3"). A true and correct copy of the written Guaranty No. 3 signed by Mardari is attached as **Exhibit F** and incorporated herein by reference.

58. Balboa has performed all the terms, conditions, and covenants required to be performed by Balboa under the terms of Guaranty No. 3, except as excused or prevented by the conduct of Mardari.

59. Following a default by Magic Trans under the terms of EFA No. 3, Balboa demanded Mardari make the payments required under EFA No. 3, Mardari failed to meet the Guaranty No. 3 obligations and make the payments required under EFA No. 3.

60. Pursuant to the terms of Guaranty No. 3, the sum of **$34,513.75**, plus prejudgment interest from June 14, 2025, is due and payable to Balboa from Mardari. This Complaint, in addition to previous demands, shall constitute further demand upon Mardari to pay the entire indebtedness due and owing from Magic Trans to Balboa under the terms of EFA No. 3.

61. Under the terms of Guaranty No. 3, Mardari promised to pay all costs, including reasonable attorneys' fees, incurred by Balboa in the enforcement of EFA No. 3 and Guaranty No. 3. Therefore, Balboa requests the Court award Balboa its reasonable attorneys' fees and costs as against Mardari.

# PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as follows:

**On the First and Second Causes of Action:**

1. The sum of **$97,650.00**;
2. Prejudgment interest from February 25, 2025, to the date of entry of judgment;
3. Late charges and non-sufficient charges in an amount to be proven at trial;
4. An order to recover possession of Collateral No. 1 which is the subject of EFA No. 1, or if Collateral No. 1 cannot be delivered, for its reasonable value according to proof;
5. Reasonable attorneys' fees and costs;
6. Costs of suit as provided by law; and
7. Such other and further relief that the Court considers proper.

**On the Third and Fourth Causes of Action:**

8. The sum of **$62,383.50**;
9. Prejudgment interest from March 11, 2025, to the date of entry of judgment;
10. Late charges and non-sufficient charges in an amount to be proven at trial;
11. An order to recover possession of Collateral No. 2 which is the subject of EFA No. 2, or if Collateral No. 2 cannot be delivered, for its reasonable value according to proof;
12. Reasonable attorneys' fees and costs;
13. Costs of suit as provided by law; and
14. Such other and further relief that the Court considers proper.

**On the Fifth and Sixth Causes of Action:**

15. The sum of **$34,513.75**;

16. Prejudgment interest from June 14, 2025, to the date of entry of judgment;

17. Late charges and non-sufficient charges in an amount to be proven at trial;

18. An order to recover possession of Collateral No. 3 which is the subject of EFA No. 3, or if Collateral No. 3 cannot be delivered, for its reasonable value according to proof;

19. Reasonable attorneys' fees and costs;

20. Costs of suit as provided by law; and

21. Such other and further relief that the Court considers proper.

DATED: June 17, 2025            SALISIAN | LEE LLP

                                By: _____
                                    Neal S. Salisian
                                    Jared T. Densen
                                    Patty W. Chen

                                Attorneys for Plaintiff
                                AMERIS BANK d/b/a BALBOA CAPITAL CORPORATION