NEAL S. SALISIAN, SBN 240277
neal.salisian@salisianlee.com
JARED T. DENSEN, SBN 325164
jared.densen@salisianlee.com
PATTY W. CHEN, SBN 322992
patty.chen@salisianlee.com
**SALISIAN | LEE LLP**
550 South Hope Street, Suite 750
Los Angeles, California 90071-2924
Telephone:   (213) 622-9100
Facsimile:   (800) 622-9145

MARISA D. POULOS, SBN 197904
marisa.poulos@amerisbank.com
**BALBOA CAPITAL CORPORATION**
575 Anton Boulevard, Suite 1080
Costa Mesa, California 92626
Tel: (949) 399-6303

Attorneys for Plaintiff
AMERIS BANK d/b/a BALBOA CAPITAL CORPORATION

THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERIS BANK, a Georgia state-chartered banking corporation, doing business as BALBOA CAPITAL CORPORATION,<br><br>         Plaintiff,<br><br>      vs.<br><br>MAGIC TRANS LLC, an Indiana limited liability company; VICTOR MARDARI, an individual,<br><br>         Defendants. | Case No.: 8:25-cv-01307-MRA (JDEx)<br><br>[Assigned to the Hon. Monica Ramirez Almadani]<br><br>**PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANTS**<br><br>Complaint Filed:  June 17, 2025<br>Trial Date:     None. |

TO THE COURT, ALL PARTIES, AND ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on September 29, 2025, at 1:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 9B of the Ronald Reagan Federal Building and United States Courthouse, located at 411 W. Fourth Street, Santa Ana, CA 92701, the Honorable Monica Ramirez Almadani presiding, plaintiff Ameris Bank, doing business as Balboa Capital Corporation ("Plaintiff" or "Balboa") will, and hereby does, apply for an entry of default judgment pursuant to Federal Rules of Civil Procedure Rule 55 and Local Rules 55-1, 55-2, and 55-3, against Defendants Magic Trans LLC ("Magic Trans") and Victor Mardari ("Mardari") (collectively, "Defendants"), for a judgment amount of **$209,413.65**.

PLEASE TAKE FURTHER NOTICE that Balboa seeks a default judgment against Defendants in the total amount of **$209,413.65**, as Balboa has established (a) a sum certain due and owing by Defendants to Balboa pursuant to the Equipment Financing Agreements and corresponding personal guaranties entered into by Defendants and Balboa; (b) that Defendants are not in military service and are neither a minor or incompetent person; and (c) costs and attorneys' fees are properly awardable.

//
//
//
//
//
//
//
//
//
//

MOTION FOR DEFAULT JUDGMENT
CASE NO. 8:25-cv-01307-MRA (JDEx)

1         PLEASE TAKE FURTHER NOTICE that this motion is based on this

2    Notice of Motion, the supporting Memorandum of Points and Authorities, the

3    supporting declarations of Patty W. Chen and Don Ngo, and the exhibits attached

4    thereto, the pleadings and papers filed in this action, and upon such further briefing,

5    authorities, and argument submitted to the Court prior to, or during, the hearing on

6    this matter.

7

8    DATED: July 24, 2025              SALISIAN | LEE LLP

9

10                                     By: _____

11                                         Neal S. Salisian

12                                         Jared T. Densen
                                           Patty W. Chen

13

14                                     Attorneys for Plaintiff
                                       AMERIS BANK d/b/a BALBOA CAPITAL
15                                     CORPORATION

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR DEFAULT JUDGMENT
CASE NO. 8:25-cv-01307-MRA (JDEx)

# **TABLE OF CONTENTS**

I.    INTRODUCTION AND RELEVANT FACTS ...............................................1

    i.    Equipment Financing Agreement No. 1. .................................................1

    ii.   Equipment Financing Agreement No. 2. .................................................2

    iii.  Equipment Financing Agreement No. 3. .................................................3

    iv.   Prejudgment Interest for the EFAs. ........................................................3

    v.    Attorneys' Fees and Costs. .....................................................................4

    vi.   Default Judgment Motion .......................................................................4

II.   LEGAL ARGUMENT ........................................................................6

    A.    Plaintiff Will Be Highly Prejudiced If Its Default Judgment
        Motion Is Denied. ...................................................................................7

    B.    Plaintiff Has A High Likelihood Of Success On The Merits
        Of Its Substantive Claims And Its Complaint Is Sufficiently Pled. ......8

    C.    The Sum Of Money At Stake Favors An Entry Of A Default
        Judgment Against Defendants. ..............................................................11

    D.    There Are No Material Facts That Are Reasonably In Dispute. .........13

    E.    Defendants' Defaults Are Not The Result Of Excusable Neglect.......15

    F.    Policy Concerns Favor Default Judgment In This Matter. .................17

    G.    Plaintiff Has Proven Its Damages. .......................................................18

III.  CONCLUSION ..............................................................................21

MOTION FOR DEFAULT JUDGMENT
CASE NO. 8:25-cv-01307-MRA (JDEx)

1

## <u>TABLE OF AUTHORITIES</u>

2

**CASES**

3

*Acoustics, Inc. v. Trepte Constr. Co.*,

4
    14 Cal.App.3d 887, 916 (1971)..................................................................9

5

*Draper v. Coombs*,

6
    792 F.2d 915, 924 (9th Cir. 1986).........................................................16

7

*Educational Serv., Inc. v. Maryland State Board for Higher Education*,

8
    710 F.2d 170, 176 (4th Cir. 1983)..........................................................16

9

*Eitel v. McCool*,

10
    782 F.2d 1470, 1471-72 (9th Cir. 1986). ....................6, 7, 9, 11, 13, 15

11

*Geddes v. United Fin. Group*,
    559 F.2d 557, 560 (9th Cir. 1977)......................................................9, 13

12

13

*Landstar Ranger, Inc. v. Parth Enters, Inc.*,
    725 F.Supp.2d 916, 921 (C.D. Cal. 2010) ...........................................13

14

15

*McKnight v. Webster*,
    499 F.Supp. 420, 424 (E.D. PA 1980) ..................................................16

16

17

*NewGen, LLC v. Safe Cig, LLC*,
    804 F.3d 606, 616 (9th Cir. 2016)....................................................15, 17

18

19

*O'Connor v. State of Nevada*,
    27 F.3d 357, 364 (9th Cir. 1994)............................................................16

20

21

*Pena v. Seguros La Comercia, S.A.*,
    770 F.2d 811, 814 (9th Cir. 1985)..........................................................17

22

23

*Penpower Tech, Ltd. v. S.P.C. Tech.*,
    627 F. Supp. 2d 1083 (N.D. Cal. 2008) ...........................................13, 17

24

*PepsiCo, Inc. v. Cal. Sec. Cans*,
    238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). ...............................7, 8, 9

25

26

*Reichert v. Gen. Ins. Co.*,
    68 Cal.2d 822, 830 (1968)........................................................................9

27

28

*Shanghai Automation Instrument Co. Ltd. v. Kuei*,
    194 F.Supp.2d 995, 1005 (N.D. Cal. 2001) .........................................16

*Walters v. Statewide Concrete Barrier, Inc.*,
    No. C 04-2559 JSW, 2006 WL 2527776, at *4 (N.D. Cal. Aug. 30, 2006) .........11

**STATUTES**

Code of Civil Procedure § 1620 ...................................................................................9

Code of Civil Procedure § 3300 ...................................................................................9

Fed. R. Civ. P. 55...........................................................................................................6

**OTHER AUTHORITIES**

RESTATEMENT 2d. CONTRACTS § 235(2) .........................................................9

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION AND RELEVANT FACTS

Plaintiff Ameris Bank, a Georgia state-chartered banking corporation, doing business as Balboa Capital Corporation ("Plaintiff" or "Balboa") submits the instant Motion for Default Judgment against Defendants Magic Trans LLC ("Magic Trans") and Victor Mardari ("Mardari") (collectively, "Defendants").

### i.    Equipment Financing Agreement No. 1.

This action involves a claim for damages by Balboa against Defendants for breach of the written Equipment Financing Agreement No. 364381-000 ("EFA No. 1"), and breach of the corresponding personal guaranty ("Guaranty No. 1"). [*See* Declaration of Don Ngo ("Ngo Decl."), ¶3, Exhs. A-B.]

Specifically, Balboa, on the one hand, and Magic Trans, on the other, entered into EFA No. 1 on or about July 19, 2021. [*See id.*, Exh. A.] Under the terms of EFA No. 1, Balboa loaned to Magic Trans the sum of $168,905.27, to finance equipment for its business ("Collateral No. 1"). [*See id.*]

Concurrently with the execution of EFA No. 1, and in order to induce Balboa to enter into EFA No. 1 with Magic Trans, Mardari personally guaranteed, in writing, through Guaranty No. 1. [*See id.*, ¶4, Exh. B.] Balboa relied on Guaranty No. 1 to finance the Collateral No. 1 for Magic Trans's business. [*See id.*]

Under EFA No. 1, Magic Trans was required to make seventy-two (72) monthly payments of $3,150.00, beginning on September 25, 2021. [*See id.*, ¶3, Exh. A.] The last payment received by Balboa was credited toward the payment due for December 25, 2025. [*See id.*, ¶5, Exh. C.] Therefore, on January 25, 2025, Magic Trans breached EFA No. 1, and Mardari breached Guaranty No. 1, by failing to make the monthly payment due on that date, and thus, both have remained continuously in default. [*See id.*]

At the time of Defendants' default there remained thirty-one (31) monthly payments, for a total of $97,650.00, due to Balboa. [*See id.*, ¶6, Exh. C.]

Following default, Defendants made two additional monthly payments which were applied to the months of January and February 25, 2025.  [*See id*., ¶7, <u>Exh. C</u>.] Thus, **$91,350.00** remains owed to Balboa.  [*See id*.]  Defendants have since failed to make further payments.  [*See id*.]

### ii.    Equipment Financing Agreement No. 2.

This action also involves a claim for damages by Balboa against Defendants for breach of the written Equipment Financing Agreement No. 364381-001 ("EFA No. 2"), and breach of the corresponding personal guaranty ("Guaranty No. 2"). [*See* Ngo Decl., ¶10, <u>Exhs. D-E</u>.]

Specifically, Balboa, on the one hand, and Defendants, on the other, entered into EFA No. 2 on or about April 4, 2022.  [*See id*., <u>Exh. D</u>.]  Under the terms of EFA No. 2, Balboa loaned to Magic Trans the sum of $97,875.00, to finance equipment for its business ("Collateral No. 2").  [*See id*.]

Concurrently with the execution of EFA No. 2, and in order to induce Balboa to enter into EFA No. 2 with Magic Trans, Mardari personally guaranteed, in writing, through Guaranty No. 2.  [*See id.*, ¶11, <u>Exh. E</u>.]  Balboa relied on Guaranty No. 2 to finance the Collateral No. 2 for Magic Trans's business.  [*See id*.]

Under EFA No. 2, Magic Trans was required to make sixty (60) monthly payments of $2,310.50, beginning on May 11, 2022.  [*See id*., ¶12, <u>Exh. F</u>.]  The last payment received by Balboa was credited toward the payment due for February 11, 2025.  [*See id*.]  Therefore, on March 11, 2025, Magic Trans breached EFA No. 2, and Mardari breached Guaranty No. 2, by failing to make the monthly payment due on that date, and thus, both have remained continuously in default.  [*See id*.]

At the time of Defendants' default, there remained twenty-seven (27) monthly payments, for a total of $62,383.50, due to Balboa.  [*See id*., ¶12, <u>Exh. F</u>.] Defendants have since failed to make further payments.  [*See id*.]

### iii.    Equipment Financing Agreement No. 3.

This action also involves a claim for damages by Balboa against Defendants for breach of the written Equipment Financing Agreement No. 364381-003 ("EFA No. 3"), and breach of the corresponding personal guaranty ("Guaranty No. 3"). [*See* Ngo Decl., ¶16, Exhs. G-H.]

Specifically, Balboa, on the one hand, and Defendants, on the other, entered into EFA No. 3 on or about May 3, 2022. [*See id*., Exh. G.]  Under the terms of EFA No. 3, Balboa loaned to Magic Trans the sum of $58,095.00, to finance equipment for its business ("Collateral No. 3"). [*See id*.]

Concurrently with the execution of EFA No. 3, and in order to induce Balboa to enter into EFA No. 3 with Magic Trans, Mardari personally guaranteed, in writing, through Guaranty No. 3. [*See id*., ¶17, Exh. H.]  Balboa relied on Guaranty No. 3 to finance the Collateral No. 3 for Magic Trans's business. [*See id*.]

Under EFA No. 3, Magic Trans was required to make sixty (60) monthly payments of $1,380.55, beginning on June 14, 2022. [*See id*., ¶18, Exh. G.]  The last payment received by Balboa was credited toward the payment due June 14, 2025. [*See id*.]  Therefore, on July 14, 2025, Magic Trans breached EFA No. 3, and Mardari breached Guaranty No. 3, by failing to make the monthly payment due on that date, and thus, both have remained continuously in default. [*See id*.]

At the time of Defendants' default there remained twenty-four (24) monthly payments, for a total of **$33,133.20**, due to Balboa. [*See id*., ¶19, Exh. I.] Defendants have since failed to make further payments. [*See id*.]

### iv.    Prejudgment Interest for the EFAs.

In addition, based on the amount due of $91,350.00 for EFA No. 1, Balboa is entitled to prejudgment interest at the statutory rate of ten percent (10%) per annum pursuant to Civ. Proc. Code § 3289 from January 25, 2025 (the date of breach) to September 29, 2025 (the date noticed for the hearing of this Default Motion) for a total interest amount of **$6,204.96**, and continues to accrue at a rate of **$25.02** per

day, until the entry of judgment.  [*See* Declaration of Patty W. Chen, ("Chen Decl."), ¶¶5-6.]

Further, based on the amount due of $62,383.50 for EFA No. 2, Balboa is entitled to prejudgment interest at the statutory rate of ten percent (10%) per annum pursuant to Civ. Proc. Code § 3289, from March 11, 2025 (the date of breach) to September 29, 2025 (the date noticed for the hearing of this Default Motion) for a total interest amount of **$3,469.27**, and continues to accrue at a rate of **$17.09** per day, until the entry of judgment.  [*See* Chen Decl., ¶¶7-8.]

Finally, based on the amount due of $33,133.20 for EFA No. 3, Balboa is entitled to prejudgment interest at the statutory rate of ten percent (10%) per annum pursuant to Civ. Proc. Code § 3289, from July 14, 2025 (the date of breach) to September 29, 2025 (the date noticed for the hearing of this Default Motion) for a total interest amount of **$698.39**, and continues to accrue at a rate of **$9.07** per day, until the entry of judgment.  [*See* Chen Decl., ¶¶9-10.]

**v.      Attorneys' Fees and Costs.**

Pursuant to Paragraphs 19 and 20 of EFA No. 1, EFA No. 2, and EFA No. 3, (the "EFAs"), Balboa is entitled to recover its attorneys' fees and costs from Defendants.  [*See* Chen Decl., ¶11; Ngo Decl., Exhs. A, D, G.]  The amount of reasonable attorneys' fees is fixed by Local Rule 55-3, in the sum of **$7,337.33** for the EFAs.  [*See* Chen Decl., ¶11.]  Balboa has indeed incurred **$4,837.00**, in recoverable costs - $405 for filing of the Complaint, $2,216.00 for the service of process fees for Magic Trans, and $2,216.00 for the service of process fees for Mardari.  [*See id*., Exh. K]

**vi.     Default Judgment Motion**

Balboa's Default Motion satisfies the procedural requirements of Local Rule 55-1 and 55-2, and Federal Rule of Civil Procedure 55(b).  Balboa filed its Complaint and case-initiating documents on June 17, 2025.  [*See* Dkts. 1-4.] Defendants were properly served on July 2, 2025 pursuant to Federal Rule of Civil

Procedure 4.  [*See* Dkts. 9-10.]  On July 29, 2025, Balboa filed its Request for

Clerk to Enter Default against Defendants. [*See* Dkt. 12.]  The Clerk entered default

against Defendants on August 5, 2025.  [*See* Dkt. 13.]

Defendant Magic Trans is an Indiana limited liability company, and is not a

minor, incompetent person, or a person in military service or otherwise exempted

from default judgment under the Servicemembers Civil Relief Act of 1940 (the

"SCRA").  [*See* Chen Decl., ¶4.]  Further, defendant Mardari is not a minor, an

incompetent person, or a person in military service or otherwise exempted from

default judgment under the SCRA.  [*See id*., Exh. J.]

Moreover, this Court has subject matter jurisdiction over the instant action.

The amount in controversy, as alleged in the Complaint and as set forth herein,

exceeds $75,000.  [*See* Dkt. 1.]  Plaintiff Balboa was and still operates as a

California corporation, with its principal place of business in Orange County,

California.  [*See* Dkt. 1, ¶1; *see also* Chen Decl., ¶12.]  Balboa is also now a wholly

owned subsidiary of Ameris Bank, and operating as a division of Ameris Bank, a

Georgia state-chartered banking corporation, and accordingly, Balboa is a citizen of

the State of California, as well as the State of Georgia, via its parent company,

Ameris Bank.  [*See id*.]

Based upon my office's research, and information and belief, defendant

Mardari is a citizen of the State of Washington, based upon the Driver's License

submitted by Mardari to Balboa.  [*See id*.]  Thus, Mardari is a citizen of the State of

Washington.  [*See id*.]  Additionally, defendant Magic Trans is an Indiana limited

liability company. [*See id*., ¶13, Exh. L.]  Based upon research, and upon

information and belief, Magic Trans has one member – defendant Mardari – who is

a citizen of the State of Washington.  [*See id*.]  Thus, Magic Trans is a citizen of

the State of Washington.  [*See id*.]  As such, there exists complete diversity

amongst the Plaintiff and Defendants.  [*See id*., ¶14.]

MOTION FOR DEFAULT JUDGMENT
CASE NO. 8:25-cv-01307-MRA (JDEx)

As set forth below, a default judgment should be entered against each of the Defendants since Balboa satisfies all seven factors under *Eitel*. Moreover, Balboa has adequately proven its damages. Thus, Balboa respectfully requests that this Court grant its request for a default judgment against Defendants in the amount of **$209,413.65.**

## II.    **LEGAL ARGUMENT**

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend," the Court may enter a judgment of default upon Plaintiff's application after an entry of default. *See* Fed. R. Civ. P. 55. Local Rule 55 sets forth the procedural requirements that must be satisfied by a party moving for a default judgment. Balboa's Motion has satisfied such requirements.

Here, Balboa filed its Complaint and case-initiating documents on June 17, 2025. [*See* Dkts. 1-4.] Defendants were properly served on July 2, 2025, pursuant to Federal Rule of Civil Procedure 4. [*See* Dkts. 9-10.] On July 29, 2025, Balboa filed its Request for Clerk to Enter Default against Defendants. [*See* Dkt. 12.] The Clerk entered default against Defendants on August 5, 2025. [*See* Dkt. 13.]

Defendant Magic Trans is a Indiana limited liability company, and is not a minor, incompetent person, or a person in military service or otherwise exempted from default judgment under the SCRA. [*See* Chen Decl., ¶4.] Further, defendant Mardari is not a minor, incompetent person, or a person in military service or otherwise exempted from default judgment under the SCRA. [*See id*., Exh. J.]

The Ninth Circuit follow the seven *Eitel* factors in deciding whether to enter a default judgment:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

MOTION FOR DEFAULT JUDGMENT
CASE NO. 8:25-cv-01307-MRA (JDEx)

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). A plaintiff need not prove that all seven factors weigh in its favor, as courts *may* consider these factors in their discretion on whether to enter a default judgment. [*See id.*]

Here, the underlying facts in this action show that all seven of the *Eitel* factors weigh in Balboa's favor and supports the entry of default judgment.

### A.    <u>Plaintiff Will Be Highly Prejudiced If Its Default Judgment Motion Is Denied.</u>

A situation in which a plaintiff will be without any other recourse or recovery should its default judgment application be denied qualifies as prejudice. *See PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).

Here, Balboa has submitted its Motion for Default Judgment as a last resort due to Defendants' deliberate unwillingness to accept responsibility for its actions or even acknowledge Balboa's allegations.

The fact remains that Balboa, pursuant to EFA No. 1, financed Collateral No. 1 for Defendants, with Defendants agreeing to make seventy-two (72) monthly payments of $3,150.00, beginning on September 25, 2021, for which thirty-one (31) monthly payments, for a total of $97,650.00, still remained due to Balboa at the time of Defendants' default. [*See* Ngo Decl., ¶¶3-6, <u>Exhs. A-C</u>.] Following default, Defendants made two additional monthly payment which was applied to the months of January and February 25, 2025. [*See id.*, ¶7, <u>Exh. C</u>.] In total, Defendants still owed $91,350.00. [*See id.*] Thus, **$91,350.00** remains owed to Balboa pursuant to EFA No. 1. [*See id.*]

In addition, Balboa, pursuant to EFA No. 2, financed Collateral No. 2 for Defendants, with Defendants agreeing to make sixty (60) monthly payments of $2,310.50, beginning on May 11, 2022, for which twenty-seven (27) monthly payments, for a total of $62,383.50, still remained due to Balboa at the time of Defendants' default. [*See* Ngo Decl., ¶¶10-15, <u>Exhs. D-F</u>.]

Moreover, Balboa, pursuant to EFA No. 3, financed Collateral No. 3 for Defendants, with Defendants agreeing to make sixty (60) monthly payments of $1,380.55, beginning on June 14, 2022, for which twenty-four (24) monthly payments, for a total of **33,133.20**, still remained due to Balboa at the time of Defendants' default.  [*See* Ngo Decl., ¶¶16-21, <u>Exh. G-I</u>.]

Defendants have since failed to make further payments on any of the EFAs. [*See id.*, ¶¶7, 13, 19.]

Balboa has made demands for its monies from Defendants, all of which Defendants have failed to pay back.  [*See id.*, ¶¶9, 15, 21.]

Balboa filed its Complaint in this action to recover the monies owed on it, but Defendants have been unwilling to participate in, or otherwise acknowledge, the litigation.  Balboa's Default Motion is its final option for an attempt at recovery, and without the Court granting the default judgment, Balboa will be prejudiced and be denied its right to a judicial resolution of its presented claims.  *See PepsiCo*, 238 F. Supp. 2d at 1177.

Moreover, if Balboa's Default Motion is denied, it will suffer a significant loss due to no fault of its own, and Defendants will obtain a significant windfall of over **$209,413.65.**  Not only will the deliberate nonaction by Defendants and their continued stalling techniques be unjustly rewarded, but Balboa will effectively be penalized for its procedurally proper demands for the return of its monies available through the court system's proper channels.

Balboa will be substantially prejudiced, especially with no other available recourse, should its Default Motion be denied, and thus, further supports the Court granting default judgment against Defendants.

**B.**     **<u>Plaintiff Has A High Likelihood Of Success On The Merits Of Its Substantive Claims And Its Complaint Is Sufficiently Pled.</u>**

"The general rule of law is that upon default[,] the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true."

*Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977).  Courts often consider the second (merits of the claim) and third (sufficiency of the complaint) factors under *Eitel* together.  *See PepsiCo*, 238 F. Supp. 2d at 1177.

The elements for a breach of contract are: (1) the existence of a contract, (2) performance by the plaintiff of its obligations under the contract, (3) breach of the contract by the defendant, and (4) resulting damages proximately caused by the defendant's breach of contract.  *Reichert v. Gen. Ins. Co.*, 68 Cal.2d 822, 830 (1968); *Acoustics, Inc. v. Trepte Constr. Co.*, 14 Cal. App. 3d 887, 916 (1971); *see also* Civ. Code §§ 1620, 3300; and RESTATEMENT 2d. CONTRACTS § 235(2).

Here, all elements are met.  Specifically, Balboa and Magic Trans entered into EFA No. 1 on or about July 19, 2021.  [*See* Ngo Decl., ¶3, <u>Exh. A</u>.]  Under the terms of EFA No. 1, Balboa loaned to Magic Trans the sum of $168,905.27, to finance Collateral No. 1.  [*See id*.]  Magic Trans was required to make seventy-two (72) monthly payments of $3,150.00, beginning on September 25, 2021.  [*See id*.]

Concurrently with the execution of EFA No. 1, and in order to induce Balboa to enter into EFA No. 1 with Magic Trans, Mardari personally guaranteed, in writing, through Guaranty No. 1.  [*See id*., ¶4, <u>Exh. B</u>.]  Balboa relied on Guaranty No. 1 to finance the Collateral No. 1 for Magic Trans's business.  [*See id*.]

The last payment received by Balboa was credited toward the payment due for December 25, 2025.  [*See id*., ¶5, <u>Exh. C</u>.]  Therefore, on January 25, 2025, Magic Trans breached EFA No. 1, and Mardari breached Guaranty No. 1, by failing to make the monthly payment due, and thus, both have remained continuously in default.  [*See id*.]

At the time of Defendants' default there thirty-one (31) monthly payments, for a total of $97,650.00, due to Balboa.  [*See id*., ¶6, <u>Exh. C</u>.]  Following default, Defendants made two additional monthly payments which were applied to the months of January and February 25, 2025.  [*See id*., ¶7, <u>Exh. C</u>.]  Thus, **$91,350.00** remains owed to Balboa under EFA No. 1.  [*See id*.]

Additionally, as to EFA No. 2, here, all elements are equally met. Specifically, Balboa and Magic Trans entered into EFA No. 2 on or April 4, 2022. [*See* Ngo Decl., ¶10, <u>Exh. D</u>.]  Under the terms of EFA No. 2, Balboa loaned to Magic Trans the sum of $97,875.00, to finance Collateral No. 2.  [*See id*.]

Concurrently with the execution of EFA No. 2, and in order to induce Balboa to enter into EFA No. 2 with Magic Trans, Mardari personally guaranteed, in writing, through Guaranty No. 2.  [*See id.*, ¶11, <u>Exh. E</u>.]  Balboa relied on Guaranty No. 2 to finance the Collateral No. 2 for Magic Trans's business.  [*See id*.]

Under EFA No. 2, Magic Trans was required to make sixty (60) monthly payments of $2,310.50, beginning on May 11, 2022.  [*See id*., ¶12, <u>Exh. F</u>.]  The last payment received by Balboa was credited toward the payment due for February 11, 2025.  [*See id*.]  Therefore, on March 11, 2025, Magic Trans breached EFA No. 2, and Mardari breached Guaranty No. 2, by failing to make the monthly payment due, and thus, both have remained continuously in default.  [*See id*.]

At the time of Defendants' default, there remained twenty-seven (27) monthly payments, for a total of $62,383.50, due to Balboa under EFA No. 2.  [*See id*., ¶13, <u>Exh. F</u>.]

In addition, as to EFA No. 3, here, all elements are equally met.  Specifically, Balboa and Magic Trans entered into EFA No. 3 on or about May 3, 2022.  [*See* Ngo Decl., ¶16, <u>Exh. G</u>.]  Under the terms of EFA No. 3, Balboa loaned to Magic Trans the sum of $58,095.00, to finance Collateral No. 3.  [*See id*.]

Concurrently with the execution of EFA No. 3, and in order to induce Balboa to enter into EFA No. 3 with Magic Trans, Mardari personally guaranteed, in writing, through Guaranty No. 3.  [*See id.*, ¶17, <u>Exh. H</u>.]  Balboa relied on Guaranty No. 3 to finance the Collateral No. 3 for Magic Trans's business.  [*See id*.]

Under EFA No. 3, Magic Trans was required to make sixty (60) monthly payments of $1,380.55, beginning on June 14, 2022.  [*See id*., ¶18, <u>Exh. G</u>.]  The last payment received by Balboa was credited toward the payment due for June 14,

2025. [*See id.*, Exh. I.]  Therefore, on July 14, 2025, Magic Trans breached EFA No. 3, and Mardari breached Guaranty No. 3, by failing to make the monthly payment due, and thus, both have remained continuously in default. [*See id.*]

At the time of Defendants' default there remained twenty-four (24) monthly payments, for a total of **$33,133.20**, due to Balboa under EFA No. 3. [*See id.*, ¶19, Exh. I.]

Defendants have since failed to make further payments on any of the EFAs. [*See id.*, ¶¶7, 13, 19.]

There is no doubt, and it cannot be disputed that: (1) Balboa and Magic Trans entered into each of the EFAs; (2) Mardari personally guaranteed, in writing, the payment of the then-existing and future indebtedness due and owing to Balboa under the terms of each the EFAs through each of the corresponding Guaranties; (3) Magic Trans received the loan in order to finance the collateral under each of the EFAs; (4) Defendants ceased making payments pursuant to each of the EFAs; and (5) Balboa has suffered and continues to suffer damages due to Defendants' continued nonpayment under each of the EFAs.  Thus, Balboa has a substantially high likelihood in succeeding on the merits of its claims.  In fact, no known defenses exist to any of the material facts.

### C.    The Sum Of Money At Stake Favors An Entry Of A Default Judgment Against Defendants.

As a general rule, courts factor the sum of money at stake on a case-by-case basis, and in relation to the other factors influencing whether to enter default judgment.  *See Eitel*, 782 F.2d at 1472 (default judgment was denied where plaintiff was seeking $3 million in damages *and* the parties disputed material facts).  This requires the court to assess whether the recovery sought is proportional to the harm caused by defendant's conduct.  *See Walters v. Statewide Concrete Barrier, Inc.*, No. C 04-2559 JSW, 2006 WL 2527776, at *4 (N.D. Cal. Aug. 30, 2006) ("[i]f the

sum of money at issue is reasonably proportionate to the harm caused by the defendant's actions, then default judgment is warranted").

In *Penpower Tech, Ltd. v. S.P.C. Tech.*, 627 F. Supp. 2d 1083 (N.D. Cal. 2008), despite reasoning that plaintiff's request for $677,075.37 in treble damages, $500,000.00 in punitive damages, $100,000.00 in statutory damages, attorneys' fees of $16,497.00, and costs of $2,005.00, were "speculative" and weighed against default judgment, the court nevertheless granted plaintiff's default judgment.

Here, under EFA No. 1, Balboa seeks compensatory damages in the amount of $91,350.00; prejudgment interest from January 25, 2025 (the date of breach) to September 29, 2025 (the date noticed for the hearing of this Default Motion) for a total interest amount of **$6,204.96** and continues to accrue at a rate of **$25.02** per day, until the entry of judgment.  [*See* Chen Decl., ¶¶5-6.]

Further, based on the amount due of $62,383.50 for EFA No. 2, Balboa is entitled to prejudgment interest, from March 11, 2025 (the date of breach) to September 29, 2025 (the date noticed for the hearing of this Default Motion) for a total interest amount of **$3,469.27**, and continues to accrue at a rate of **$17.09** per day, until the entry of judgment.  [*See* Chen Decl., ¶¶7-8.]

Finally, based on the amount due of $33,133.20 for EFA No. 3, Balboa is entitled to prejudgment interest, from July 14, 2025 (the date of breach) to September 29, 2025 (the date noticed for the hearing of this Default Motion) for a total interest amount of **$698.39**, and continues to accrue at a rate of **$9.07** per day, until the entry of judgment.  [*See* Chen Decl., ¶¶9-10.]

The damages sought are contractually-based and arise out of the clear terms and obligations of each of the EFAs; the prejudgment interest for each EFA was calculated at the statutory rate of ten percent (10%) per annum pursuant to Civ. Proc. Code § 3289; and the attorneys' fees requested are fixed by Local Rule 55-3. [*See id.*, ¶¶5-11.]

As such, the sum of money sought is reasonable and far from speculative.  It is also substantially less than the $3 million sought in *Eitel*, in which this sum, and other factors, weighed in the favor of denying default judgment.  And it is also substantially less than the roughly $1.3 million sought in *Penpower Tech*, in which default judgment was granted, despite the sum of money being deemed "speculative."

Thus, the sum of money sought in this action weighs in the favor of granting default judgment, especially in the light of the other seven *Eitel* factors, and due to the certainty and reasonableness of the sum.

### D.    There Are No Material Facts That Are Reasonably In Dispute.

"The general rule of law is that upon default[,] the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *See Geddes, supra*, 559 F.2d at 560.  Where a plaintiff's complaint is well-pleaded and the defendants make no effort to properly respond, the likelihood of disputed facts is very low.  *See Landstar Ranger, Inc. v. Parth Enters, Inc.*, 725 F. Supp. 2d 916, 921 (C.D. Cal. 2010).

As thoroughly detailed in Section II.B., *supra*, there are no material facts that are reasonably in dispute.

Here, specifically, Balboa and Magic Trans entered into EFA No. 1 on July 19, 2021.  [*See* Ngo Decl., ¶3, Exh. A.]  Under the terms of EFA No. 1, Balboa loaned to Magic Trans the sum of $168,905.27, to finance Collateral No. 1.  [*See id*.]  Magic Trans was required to make seventy-two (72) monthly payments of $3,150.00, beginning on September 25, 2021.  [*See id*., ¶3, Exh. A.]

Concurrently with the execution of EFA No. 1, and in order to induce Balboa to enter into EFA No. 1 with Magic Trans, Mardari personally guaranteed, in writing, through Guaranty No. 1.  [*See id*., ¶4, Exh. B.]  Balboa relied on Guaranty No. 1 to finance the Collateral No. 1 for Magic Trans's business.  [*See id*.]

The last payment received by Balboa was credited toward the payment due for December 25, 2025.  [*See id*., ¶5, Exh. C.]  Therefore, on January 25, 2025, Magic Trans breached EFA No. 1, and Mardari breached Guaranty No. 1, by failing to make the monthly payment, and thus, both have remained continuously in default.  [*See id*.]  At the time of Defendants' default there remained thirty-one (31) monthly payments, for a total of $97,650.00, due to Balboa.  [*See id*., ¶6, Exh. C.]  Following default, Defendants made two additional monthly payments which Balboa applied to the months of January and February 25, 2025.  [*See id*., ¶7, Exh. C.]  In total, Defendants owe $91,350.00 to Balboa under EFA No. 1.  [*See id*.]

Additionally, as to EFA No. 2, here, all elements are equally met.  Specifically, Balboa and Defendants entered into EFA No. 2 on April 4, 2022.  [*See* Ngo Decl., ¶10, Exh. D.]  Under the terms of EFA No. 2, Balboa loaned to Magic Trans the sum of $97,875.00, to finance Collateral No. 2.  [*See id*.]

Concurrently with the execution of EFA No. 2, and in order to induce Balboa to enter into EFA No. 2 with Magic Trans, Mardari personally guaranteed, in writing, through Guaranty No. 2.  [*See id.*, ¶11, Exh. E.]  Balboa relied on Guaranty No. 2 to finance the Collateral No. 2 for Magic Trans's business.  [*See id*.]

Under EFA No. 2, Magic Trans was required to make sixty (60) monthly payments of $2,310.50, beginning on May 11, 2022.  [*See id*., ¶12, Exh. F.]  The last payment received by Balboa was credited toward the payment due for February 11, 2025.  [*See id*.]  Therefore, on March 11, 2025, Magic Trans breached EFA No. 2, and Mardari breached Guaranty No. 2, by failing to make the monthly payment, and thus, both have remained continuously in default.  [*See id*.]  At the time of Defendants' default, there remained twenty-seven (27) monthly payments, for a total of $62,383.50, due to Balboa under EFA No. 2.  [*See id*., ¶13.]

In addition, as to EFA No. 3, here, all elements are equally met.  Specifically, Balboa and Magic Trans entered into EFA No. 3 on May 3, 2022.  [*See* Ngo Decl.,

¶16, Exh. G.]  Under the terms of EFA No. 3, Balboa loaned to Magic Trans the sum of $58,095.00, to finance Collateral No. 3.  [*See id*.]

Concurrently with the execution of EFA No. 3, and in order to induce Balboa to enter into EFA No. 3 with Magic Trans, Mardari personally guaranteed, in writing, through Guaranty No. 3.  [*See id*., ¶17, Exh. H.]  Balboa relied on Guaranty No. 3 to finance the Collateral No. 3 for Magic Trans's business.  [*See id*.]

Under EFA No. 3, Magic Trans was required to make sixty (60) monthly payments of $1,380.55, beginning on June 14, 2022.  [*See id*., ¶17, Exh. I.]  The last payment received by Balboa was credited toward the payment due for June 14, 2025, [*See id*., Exh. I.]  Therefore, on July 14, 2025, Magic Trans breached EFA No. 3, and Mardari breached Guaranty No. 3, by failing to make the monthly payment, and thus, both have remained continuously in default.  [*See id*.]  At the time of Defendants' default there remained twenty-four (24) monthly payments, for a total of **$33,133.20**, due to Balboa for EFA No. 3.  [*See id*., ¶19, Exh. I.]

Defendants have since failed to make further payments on any of the EFAs.  [*See id*., ¶¶7, 13, 19.]

Defendants cannot dispute any of the facts in any way or make any reasonable arguments surrounding any of the material facts in this action.  If anything, Defendants' refusal to participate in, or even acknowledge the litigation, is evidence that no such defense exists.

## E.    Defendants' Defaults Are Not The Result Of Excusable Neglect.

Excusable neglect is not found where a defendant who was properly served simply ignored the deadline to respond.  *See NewGen, LLC v. Safe Cig, LLC*, 804 F.3d 606, 616 (9th Cir. 2016) (adding that defendant's counsel contacting plaintiff's counsel after default had been entered did not constitute to "excusable neglect").  In fact, courts have required some showing of good faith by the defaulted defendant to constitute "excusable neglect."  *See Eitel*, 782 F.2d at 1471-72 (defendant's failure to answer was held to be excusable neglect in light of ongoing settlement

negotiations); *Draper v. Coombs*, 792 F.2d 915, 924 (9th Cir. 1986) (finding excusable neglect where defendant filed an answer past the deadline and on the same day that the motion for default judgment was filed); *O'Connor v. State of Nevada*, 27 F.3d 357, 364 (9th Cir. 1994) (excusable neglect was found where defendant has good faith of a timely answer); *Educational Serv., Inc. v. Maryland State Board for Higher Education*, 710 F.2d 170, 176 (4th Cir. 1983) (excusable neglect found where defendant had appeared in the action and opposed a request for a preliminary injunction in which the party had set forth its defenses); *McKnight v. Webster*, 499 F. Supp. 420, 424 (E.D. PA 1980) (excusable neglect found where defendant sought an extension of time to respond, but a default judgment was sought in the interim).

Where the defendants "were properly served with the Complaint, the notice for the entry of default, as well as documents in support of the instant [default judgment application]," favors this factor for the entry of default judgment. *See Shanghai Automation Instrument Co. Ltd. v. Kuei*, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001).

Here, Defendants failed to make any showing whatsoever that their unwillingness to participate in the litigation stemmed from, or was in any way due to, excusable neglect. On July 2, 2025, Balboa served Defendants by personal service on Mardari, as an individual and as the registered agent for service of process for Magic Trans, at 23124 64th Street Court East, Buckley, WA 98321. [*See* Dkt. 9-10.]

Further, Defendants were additionally served at the same address thereafter with the Request for Clerk to Enter Default. [*See* Dkt. 12.] Defendants have not yet made any appearance in the action, and thus, have not made any effort to answer, defend, or otherwise participate, in this action.

As detailed above, courts have found for excusable neglect only in cases in which a defendant makes good faith showing that the defendant attempts to

MOTION FOR DEFAULT JUDGMENT
CASE NO. 8:25-cv-01307-MRA (JDEx)

participate in the litigation to address and defend the allegations set forth against the defendant.  Declining to respond to a complaint after proper service (even in the case where defendant's counsel contacts plaintiff's counsel after the entry of default), does not warrant a finding of excusable neglect.  *See NewGen*, 804 F.3d at 616.

Here, Defendants have failed to acknowledge their wrongdoings and the allegations they face, even in the slightest degree.  Instead, Defendants have blatantly ignored Balboa's Complaint and all other papers filed thereafter.  Rather, Defendants' course of action in response to Balboa's Complaint, or the apparent lack thereof, is intentional, and thus, would not constitute excusable neglect.

### F.    Policy Concerns Favor Default Judgment In This Matter.

Although courts have expressed that as a general rule, policy favors decisions on the merits, cases should be decided on its merits only when *reasonably possible*.  *See Pena v. Seguros La Comercia, S.A.*, 770 F.2d 811, 814 (9th Cir. 1985) (emphasis added).  The policy preference to decide a case on its merits is not dispositive, and thus, does not preclude a court from granting a default judgment.  *See Penpower Tech, Ltd.*, 627 F. Supp. 2d at 1093 (defendants' failure to respond to a Complaint makes a case decision on its merits impractical, if not, impossible).

Here, even the policy concerns to decide a case on its merits favor Balboa to grant Balboa's request for a default judgment.  As detailed in II.E., *supra*, Defendants have made it abundantly clear that they will not participate in this litigation, or even acknowledge the instant action.  Defendants have deliberately chosen a course of action to simply ignore Balboa and its claims against them, including their own liability.  Thus, the Court's decision will not be based on the merits of this case since there is no reasonable possibility at this point given Defendants' refusal to participate in this litigation.

Moreover, policy concerns certainly do not weigh in favor of rewarding Defendants for their unwillingness to account for their liability to Balboa, and the

extremely prejudicial windfall they would receive should their deliberate silence
and stalling techniques be rewarded, at Balboa's expense.  *See* Section II.A., *supra*.

### G.    Plaintiff Has Proven Its Damages.

Under the terms of EFA No. 1, Balboa loaned to Magic Trans the sum of
$168,905.27, to finance Collateral No. 1. [*See* Ngo Decl., ¶3, Exh. A ]  Magic
Trans was required to make seventy-two (72) monthly payments of $3,150.00,
beginning on September 25, 2021. [*See id.*]  The last payment received by Balboa
was credited toward the payment due for December 25, 2025. [*See id.*, ¶5.]
Therefore, on January 25, 2025, Magic Trans breached EFA No. 1, and Mardari
breached Guaranty No. 1, by failing to make the monthly payment, and thus, both
have remained continuously in default. [*See id.*, Exhs. A-B.]  At the time of
Defendants' default there remained thirty-one (31) monthly payments, for a total of
$97,650.00, due to Balboa. [*See id.*, ¶6, Exh. C.]  Following default, Defendants
made two additional monthly payments which were applied to the months of
January and February 25, 2025. [*See id.*, ¶7, Exh. C.]  In total, Defendants still
owed $91,350.00. [*See id.*]  Thus, **$91,350.00** remains owed to Balboa. [*See id.*]

In addition, based on the amount due of $91,350.00 for EFA No. 1, Balboa is
entitled to prejudgment interest at the statutory rate of ten percent (10%) per annum
pursuant to Civ. Proc. Code § 3289 from January 25, 2025 (the date of breach) to
September 29, 2025 (the date noticed for the hearing of this Default Motion) for a
total interest amount of **$6,204.96**, and continues to accrue at a rate of **$25.02** per
day, until the entry of judgment. [*See* Chen Decl., ¶¶5-6.]

Also, under EFA No. 2, Magic Trans was required to make sixty (60)
monthly payments of $2,310.50, beginning on May 11, 2022. [*See id.*, Ngo Decl.
¶12, Exh. D.]  The last payment received by Balboa was credited toward the
payment due for February 11, 2025. [*See id.*¶12, Exh. F.]  Therefore, on March 11,
2025, Magic Trans breached EFA No. 2, and Mardari breached Guaranty No. 2, by
failing to make the monthly payment, and thus, both have remained continuously in

default.  [*See id.*, Exhs. D-E.]  At the time of Defendants' default, there remained twenty-seven (27) monthly payments, for a total of $62,383.50, due to Balboa.  [*See id.*, ¶13, Exh. F.]

Further, based on the amount due of $62,383.50 for EFA No. 2, Balboa is entitled to prejudgment interest at the statutory rate of ten percent (10%) per annum pursuant to Civ. Proc. Code § 3289, from March 11, 2025 (the date of breach) to September 29, 2025 (the date noticed for the hearing of this Default Motion) for a total interest amount of **$3,469.27**, and continues to accrue at a rate of **$17.09** per day, until the entry of judgment.  [*See* Chen Decl., ¶¶7-8.]

In addition, under EFA No. 3, here, all elements are equally met. Specifically, Balboa and Defendants entered into EFA No. 3 on May 3, 2022.  [*See* Ngo Decl., ¶16, Exh. G.]  Under the terms of EFA No. 3, Balboa loaned to Magic Trans the sum of $58,095.00, to finance Collateral No. 3.  [*See id.*]

Under EFA No. 3, Magic Trans was required to make sixty (60) monthly payments of $1,380.55, beginning on June 14, 2022.  [*See id.*, ¶18, Exh. H.]  The last payment received by Balboa was credited toward the payment due for June 14, 2025, [*See id.*, Exh. I.]  Therefore, on July 14, 2025, Magic Trans breached EFA No. 3, and Mardari breached Guaranty No. 3, by failing to make the monthly payment, and thus, both have remained continuously in default.  [*See id.*]  At the time of Defendants' default there remained twenty-four (24) monthly payments, for a total of **$33,133.20**, due to Balboa.  [*See id.*, ¶19, Exh. I.]

Also, based on the amount due of $33,133.20 for EFA No. 3, Balboa is entitled to prejudgment interest at the statutory rate of ten percent (10%) per annum pursuant to Civ. Proc. Code § 3289, from July 14, 2025 (the date of breach) to September 29, 2025 (the date noticed for the hearing of this Default Motion) for a total interest amount of **$698.39**, and continues to accrue at a rate of **$9.07** per day, until the entry of judgment.  [*See* Chen Decl., ¶¶9-10.]

Pursuant to Paragraphs 19 and 20 of each of the EFAs, Balboa is entitled to recover its attorneys' fees and costs from Defendants. [*See* Chen Decl., ¶11, <u>Exh. K</u>.] The amount of reasonable attorneys' fees is fixed by Local Rule 55-3, in the sum of **$7,337.33** for the EFAs. [*See id*.] Balboa has indeed incurred **$4,837.00**, in recoverable costs - $405 for filing of the Complaint, $2,216.00 for the service of process fees for Magic Trans, and $2,216.00 for the service of process fees for Mardari. [*See id*.]

Altogether, this totals out to <u>**$209,413.65**</u> (as of September 29, 2025), calculated as follows:

| | | | |
|---|---|---|---|
| EFA No. 1: | Amount Owed: | $ | 91,350.00 |
| | Prejudgment Interest: | $ | 6,204.96 |
| EFA No. 2: | Amount Owed: | $ | 62,383.50 |
| | Prejudgment Interest: | $ | 3,469.27 |
| EFA No. 3: | Amount Owed: | $ | 33,133.20 |
| | Prejudgment Interest: | $ | 698.39 |
| Attorneys' Fees: | | $ | 7,337.33 |
| Costs: | | $ | 4,837.00 |
| **TOTAL:** | | **$** | **209,413.65** |

//
//
//
//
//
//
//
//

20

## III.   <u>CONCLUSION</u>

Based on Balboa's Complaint, Default Judgment Motion, and all supporting papers, Balboa respectfully requests that the Court grant its Default Judgment Motion against Defendants, in the total amount of **<u>$209,413.65.</u>**

DATE: July 24, 2025                    SALISIAN | LEE LLP

By: _____
        Neal S. Salisian
        Jared T. Densen
        Patty W. Chen

Attorneys for Plaintiff
AMERIS BANK d/b/a BALBOA CAPITAL CORPORATION